# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JEFFERY EUGENE MARTIN, | Case No. 1:14-cv-00435-CWD |
| Petitioner, | |
| vs. | **MEMORANDUM DECISION AND ORDER** |
| WARDEN AL RAMIREZ, | |
| Respondent. | |

Pending before the Court is Respondent's Motion for Summary Dismissal, requesting dismissal of the Petition for Writ of Habeas Corpus on the grounds of untimeliness and procedural default. (Dkt. 15.) Petitioner has filed a Response, and the motion is now fully briefed. (Dkts. 17, 18.)[1] The Court takes judicial notice of the records from Petitioner's state court proceedings that have been lodged by the parties. *See* Fed. R. Evid. 201(b); *Dawson v Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006).

All parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case in accordance with 28 U.S.C. § 636(c). (Dkt. 13.) Having reviewed the record, including the state court record, the Court concludes that oral argument is unnecessary, and enters this order dismissing the Petition with prejudice.

---

[1] Petitioner has completed his sentence and was discharged on September 29, 2015. His Petition remains at issue and is not moot because he filed it prior to completing his sentence and because negative collateral consequences arise from a felony conviction.

**MEMORANDUM DECISION AND ORDER - 1**

## REVIEW OF RESPONDENT'S MOTION TO DISMISS

### 1.   Standard of Law Governing Dismissal on Statute of Limitation Grounds

When a petitioner's compliance with threshold procedural requirements is at issue, a respondent may file a motion for summary dismissal, rather than an answer. *White v. Lewis*, 874 F.2d 599, 602 (9th Cir. 1989). Rule 4 of the Rules Governing § 2254 Cases authorizes the Court to summarily dismiss a petition for writ of habeas corpus when "it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court."

The Antiterrorism and Effective Death Penalty Act (AEDPA) requires a petitioner to seek federal habeas corpus relief within one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." [2] 28 U.S.C. § 2244(d)(1)(A). One year means 366 days, for example, from January 1, 2000, to January 1, 2001. *See Patterson v. Stewart*, 251 F.3d

---

[2]      Several other triggering events for the statute of limitations exist—but are less common—and are set forth in subsections 2244(d)(1)(B)-(D):

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

**MEMORANDUM DECISION AND ORDER - 2**

1243, 1246 (9th Cir. 2001) (applying Federal Rule of Civil Procedure 6(a) to AEDPA,

where the calculation excludes the day the conviction became final).

Under 28 U.S.C. § 2244(d)(1)(A), the date of "finality" that begins the one-year

time period is marked as follows, depending on how far a petitioner pursues his claim:

| **Action Taken** | **Finality Occurs** |
|---|---|
| No appeal is filed after state district court order or judgment (*see* Idaho Appellate Rule 14) | 42 days later |
| Appeal is filed and Idaho Court of Appeals issues a decision, but no petition for review is filed with the Idaho Supreme Court (*see* Idaho Appellate Rule 118) | 21 days later |
| Appeal is filed and Idaho Supreme Court issues a decision or denies a petition for review of an Idaho Court of Appeals decision, and Petitioner does not file a petition for writ of certiorari with the United States Supreme Court (*see* United States Supreme Court Rule 13) | 90 days later |
| After Idaho Supreme Court issues a decision or denies a petition for review, Petitioner files a petition for writ of certiorari to the United States Supreme Court, and the petition is denied | date of denial |

In each instance above, "finality" is measured from entry of the final judgment or

order, not from a remittitur or mandate, which are mere formalities. *Gonzales v. Thaler*,

132 S.Ct. 641, 653 (2012); *Clay v. United States*, 537 U.S. 522, 529 (2003); *Wixom v.*

*Washington*, 264 F.3d 894, 898 n.4 (9th Cir. 2001).

AEDPA also contains a tolling provision that stops or suspends the one-year

limitations period from running during the time in "which a properly filed application for

State postconviction or other collateral review . . . is pending." 28 U.S.C. § 2244(d)(2).[3]

---

[3] In *Wall v. Kholi,* 131 S.Ct. 1278 (2011), the United States Supreme Court held that a motion to reduce a sentence under Rhode Island state law was a "collateral review" application that tolled the AEDPA statute

**MEMORANDUM DECISION AND ORDER - 3**

Because this particular statutory provision applies only to "pending" actions, the added time periods associated with the calculation of finality after direct appeal are *not* applied to extend the tolling periods for postconviction actions. In addition, the statute of limitations is *not* tolled between the date the direct appeal is "final" and the filing of a proper postconviction application, or between postconviction finality and any successive collateral review petition. *Id.* Each time statutory tolling ends, the statute of limitations does not restart at one year, but begins running at the place where it stopped before the postconviction action was filed.

Once a federal statute of limitations has expired, it cannot be reinstated or resurrected by a later-filed state court action. *See Ferguson v. Palmateer*, 321 F.3d 820, 822 (9th Cir. 2003) ("section 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed").

## 2. Procedural Background

Petitioner was convicted by jury of possession of a controlled substance in Criminal Case No. H0501565, in Ada County, Idaho. He filed a direct appeal, which concluded on October 30, 2008. (State's Lodging B-1 to B-13.) Eight months later, on June 30, 2009 (mailbox rule date), Petitioner filed a state post-conviction petition. After denial of the post-conviction petition, Petitioner filed an appeal, which concluded on February 11, 2014, after nearly five years. (State's Lodgings C-1 to D-8.)

---

of limitations under § 2244(d)(2). Idaho's Rule 35 is similar to Rhode Island's; thus, Idaho petitioners' federal habeas corpus statute of limitations may be tolled while Rule 35 proceedings are pending.

**MEMORANDUM DECISION AND ORDER - 4**

Eight months later, on October 9, 2014, Petitioner filed his federal petition in this action. The petition is not dated, but the "IMSI Legal Mail Log" shows that the petition was received by prison officials for mailing on October 7, 2014. (Dkt. 17-1, p. 10.)

### 3. Discussion of Timeliness of Filing and Statutory Tolling

Petitioner's direct appeal concluded in the Idaho Supreme Court on October 27, 2008. Petitioner did not file a petition for writ of certiorari with the United States Supreme Court. As a result, Petitioner's judgment became final at the end of the 90-day time period for filing a petition, on January 25, 2009. Petitioner had 366 days, until January 25, 2010, in which to file his federal petition under 28 U.S.C. § 2244.

Petitioner's federal statute of limitations ran for 155 days, until it was statutorily tolled by the filing of his state post-conviction petition on June 27, 2009 (assuming, without deciding, that the mailbox rule date applies). When that action concluded in the Idaho Supreme Court, on February 11, 2014, the federal statute of limitations began running the next day, with 211 days left (366 – 155 = 211). The statute of limitations period expired after 211 days, on September 10, 2014, nearly one month before Petitioner filed his federal petition on October 7, 2014 (mail box rule date).[4]

Petitioner newly argues that his statutory tolling has not yet expired, because he filed a motion for a new trial in his state criminal case on July 5, 2011, which was never ruled upon (State's Lodging A-7). However, the record does not support his contention. Petitioner was transported to state court on December 9, 2011, for adjudication of the

---

[4] While Petitioner filed other state court actions during the pendency of the state-post-conviction matter, they are not included in the analysis because they were concluded prior to the end of the state post-conviction matter, and are thus not relevant.

**MEMORANDUM DECISION AND ORDER - 5**

motion for new trial. (State's Lodging A-8.) Petitioner was present in person with counsel, Teresa Martin. (State's Lodging A-9.) Both sides were given an opportunity to address the motion. Judge Hansen observed that the motion appeared untimely, defense counsel responded, and the State's attorney argued the motion was untimely and asked for it to be dismissed. Judge Hansen then denied the motion, as reflected on the brief written record of the hearing proceedings. (State's Lodging A-9.) The fact that there is no separate written order does not mean that the motion is still pending and that the statute of limitations remained tolled through the date Petitioner filed his federal Petition. This argument is without merit.

### 4.   Standard of Law Governing Equitable Tolling

If a petition is deemed untimely, a federal court can hear the claims if the petitioner can establish that "equitable tolling" should be applied. In *Pace v. DiGuglielmo*, the Supreme Court clarified that,"[g]enerally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." 544 U.S. 408, 418 (2005). In addition, there must be a causal link between the lateness and the extraordinary circumstances. *See Bryant v. Schriro*, 499 F.3d 1056, 1061 (9th Cir. 2007) (A petitioner must show that his untimeliness was caused by an external impediment and not by his own lack of diligence.). The petitioner bears the burden of bringing forward facts to establish a basis for equitable tolling. *United States v. Marolf*, 173 F.3d 1213, 1318, n. 3 (9th Cir. 1999).

### 5.  Discussion of Equitable Tolling Arguments

Petitioner brings forward several arguments to excuse the untimely filing of his Petition. First, he alleges that prison personnel lost several of his state criminal files in November 2012. At that time he was attempting to prepare a federal habeas corpus petition, but could not do so without the files. (Dkt. 17-1, p. 1.) This was during the time that his state post-conviction action was pending (State's Lodgings D-1, D-3), a phase of his case that was handled by Attorney Deborah Whipple.

Petitioner filed a federal habeas corpus petition on December 6, 2012, to contest the conditions of his confinement, rather than the fact of his conviction and sentence. (See Case No. 3:12-cv-00598-CWD, *Martin v. Carlin*.) With the petition, he filed a motion requesting that the Court issue a preliminary injunction requiring the Idaho Department of Correction to locate and return his legal documentation to him. Petitioner's case was dismissed on April 11, 2013, for failure to state a habeas corpus claim upon which relief can be granted, because the type of claims he raised were more appropriate for a civil rights action. Petitioner was instructed to file a civil rights complaint if he desired to pursue his claims. (See Dkt. 9, in Case No. 3:12-cv-00598-CWD.) This time period was a year and a half before the federal filing deadline.

On August 27, 2013, Petitioner acknowledged that he was on a "strict time limitation" regarding the filing of his federal habeas corpus petition. (Dkt. 18-1, Appendix A, Inmate Activity Log, p. 7.) He requested permission to have lined paper sent to him by his family. In response, the prison paralegal notified him that the Court does not require any specific type of paper or typing, and that forms were available at the

**MEMORANDUM DECISION AND ORDER - 7**

legal resource center. (*Id.*) No mention is made of any missing legal files by this point in time. At the time of the request and response, Petitioner still had approximately one year to prepare his petition.

Petitioner has not produced any evidence showing any of the following: (1) that his legal files were not located and returned by the prison in time for him to meet the filing date of September 10, 2014; (2) that he requested a copy of his files from his attorney, Ms. Whipple; (3) that he requested a copy of his files from the state court under its indigent status procedures; or (4) that he filed a state or federal action to obtain return or replacement of the files if he did not receive them. Because Petitioner does not show that the files were not returned or that he pursued their return with diligence, and because Petitioner had, at that time, ample time to pursue their return and prepare his federal habeas corpus petition before the deadline, these facts do not warrant equitable tolling.

Petitioner next alleges that his legal work was withheld from him for 49 days in March and April 2014. In *Lott v. Mueller*, 304 F.3d 918 (9th Cir. 2002), the United States Court of Appeals for the Ninth Circuit held that the prisoner was entitled to equitable tolling under circumstances where he was denied access to his legal files for 82 days at the end of the tolling period during a temporary transfer from prison to another district to testify in unrelated case *and* the law on the proper method for tolling was unsettled. Here, however, Petitioner had ample time after April 2014 to complete and file his petition, especially given that he had been working on his petition since 2012 or 2013. Petitioner's lack of legal materials for about one month and a half during a time period well before the filing deadline did not create an "impossibility" or an "unusual obstacle

**MEMORANDUM DECISION AND ORDER - 8**

beyond [his] control" that was so long or so close to the end of the limitations period such that he could not file the federal petition in time. *See Lott*, 304 F.3d at 924. Rather, Petitioner speaks only in generalities and does not tie any particular missing items or time periods to missing the statute of limitations.

Petitioner also provides a concern form he wrote to Warden Ramirez on August 13, 2015, requesting a mail log to show the mailing date of the federal petition. Petitioner wrote that, when he submitted a "federal habeas corpus" to paralegal Shedd in "late September or early October of 2014," the last four pages of the submission and the signature page were missing on his returned copy. Petitioner has also provided this Court with a letter he wrote to Clerk of Court Elizabeth Smith on November 24, 2014, which complains that prison staff would not copy his exhibits to legal documents and inquiring about a motion for specific performance he filed in a previous civil rights case, Case No. 02-00048-MHW (BLW). The circumstances cited in these written complaints do not describe events that are causally linked to the late filing of the federal petition.

### 6.     Standard of Law Governing Actual Innocence Exception

The United States Supreme Court has determined that there is an "actual innocence" exception to the AEDPA statute of limitations, and that the exception applies where a petitioner meets the rigorous actual innocence standard of *Schlup v. Delo*, 513 U.S. 298 (1995). *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1928 (2013). To make a showing of actual innocence under *Schlup*, a petitioner must present new evidence

showing that "'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *Perkins*, 133 S.Ct. at 1933 (quoting *Schlup*, 513 U.S. at 329).[5]

Types of evidence "which may establish factual innocence include credible declarations of guilt by another, *see Sawyer v. Whitley*, 505 U.S. 333, 340 (1992), trustworthy eyewitness accounts, *see Schlup*, 513 U.S. at 331, and exculpatory scientific evidence." *Pitts v. Norris*, 85 F.3d 348, 350-51 (8th Cir. 1996). The evidence supporting the actual innocence claim must be "newly presented" evidence of actual innocence, meaning that "it was not introduced to the jury at trial"; it need not be "newly discovered," meaning that it could have been available to the defendant during his trial, though it was not presented to the jury. *Griffin v. Johnson*, 350 F.3d 956, 962–63 (9th Cir. 2013).

This exception is to be applied only in the "extraordinary" or "extremely rare" case. *House v. Bell*, 547 U.S. 518, 538 (2006); *Schlup*, 513 U.S. at 320-21. In *Larsen v. Soto*, the United States Court of Appeals for the Ninth Circuit summarized the difference between those cases that meet the high actual innocence standard, and those that do not:

> The *Schlup* standard "is demanding," *Perkins*, 133 S.Ct. at 1936, and precedents holding that a habeas petitioner satisfied its strictures have typically involved dramatic new evidence of innocence. In *House*, for instance, DNA evidence established that semen found on a murder victim came from the victim's husband and not from House, *see* 547 U.S. at 540–41, 126 S.Ct. 2064, and there was evidence that the husband had a history of violence toward his wife, raising an inference that he "could have been the murderer," *id.* at 548, 126 S.Ct. 2064. In *Carriger*, the prosecution's

---

[5] Where the petitioner pleaded guilty and did not have the evidence in his case evaluated by a jury, he must show that, based on all of the evidence, "it is more likely than not that no reasonable juror would have found Petitioner guilty. . . ." *Van Buskirk v. Baldwin*, 265 F.3d 1080, 1084 (9th Cir. 2001), *citing Schlup v. Delo*, 513 U.S. 298, 327 (1995).

**MEMORANDUM DECISION AND ORDER - 10**

chief trial witness had confessed in open court that he himself (and not Carriger) had committed the murder for which Carriger had been convicted. *See* 132 F.3d at 471–72. In contrast, we have denied access to the *Schlup* gateway where a petitioner's evidence of innocence was merely cumulative or speculative or was insufficient to overcome otherwise convincing proof of guilt. *See, e.g., Lee v. Lampert*, 653 F.3d 929, 943–46 (9th Cir. 2011); *Sistrunk v. Armenakis*, 292 F.3d 669, 675–77 (9th Cir. 2002). Thus, to satisfy *Schlup*, the petitioner's new evidence must convincingly undermine the State's case. However, definitive, affirmative proof of innocence is not strictly required. As we explained in *Carriger*, a *Schlup* claim "is procedural, not substantive": a petitioner's new evidence must be sufficient to undermine a court's confidence in his conviction, but not to erase any possibility of guilt. 132 F.3d at 478.

742 F.3d 1083, 1095-96 (9th Cir. 2013).

"Unexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing." *McQuiggin*, 133 S.Ct. at 1935. In other words, a petitioner's diligence should not be considered "discretely, but as part of the assessment whether actual innocence has been convincingly shown." *Id.*

### 7. Discussion of Actual Innocence

Petitioner alleges that he is factually innocent, because he was unaware of any illegal items in the car he was driving at the time of his arrest. He asserts that his conviction was based upon the perjured testimony of State witnesses and the false statements of the prosecutor. He argues that Christina Maxwell, his girlfriend who owned the car, was working as an agent of the State and received dismissal of numerous mandatory sentences in exchange for aiding in Petitioner's arrest and conviction. Petitioner claims that an estranged friend had hidden the illegal items in the car, and he had no knowledge of, or intent to possess, them. Petitioner asserts that the officer who stopped him was positioned beside him in traffic, not behind him, and could not have

**MEMORANDUM DECISION AND ORDER - 11**

seen his license plate, and that the officer's excuse for stopping him—that he was driving a car with license plates that were not registered to that vehicle—was untrue and that he was stopped as part of a conspiracy by Maxwell, the estranged friend, and officers to arrest him on false charges.

However, Petitioner made most of these arguments to the jury during his criminal trial, and so they are not "new." In addition, during his trial testimony, Petitioner admitted more than sufficient facts supporting the elements of the crime. (State's Lodging A-3.) Where Petitioner denied certain facts at trial, such as whether he knew the drug kit was in the car he was driving, and where he cross-examined witnesses on his theories, it is obvious that the jury made a credibility determination based on the testimony and demeanor of Petitioner and the adverse witnesses.

The officers testified that, when Petitioner was stopped in the car with the wrong license plates on it, he had no driver's license, but instead produced an Idaho Department of Correction identification card, and stated that he had just been released from prison after ten years. When asked whether he had any weapons, he told the officer he had a knife. The officer then frisked Petitioner. A number of used syringes were found in his pocket. Petitioner claimed that the syringes were insulin needles used to inject oil into a spray painter at Petitioner's place of work. Officers asked Petitioner permission to search the vehicle, and Petitioner assented. A second officer on the scene found a black pouch containing baggies of methamphetamine, a spoon, some cotton, and another syringe. The officers testified that Petitioner admitted to officers that the pouch belonged to him, and

when asked why he was driving around with methamphetamine, he responded, "Because I'm a f---ing idiot."

At trial, Petitioner admitted to making the statement, but he denied the officer's representation that Petitioner had admitted the bag was his at the scene of the arrest. Petitioner testified at trial that the bag belonged to his friend, who hid the bag with a motive of revenge, and Petitioner denied having knowledge that it was under the seat, but said he took responsibility for it at the scene because he loved Maxwell (the car owner) and didn't want her to be in trouble. However, Petitioner admitted at trial that he used methamphetamine fairly regularly, that he himself did not like injecting himself with the type of flexible needles found in the kit (preferring a different method), and that he had used the syringe found in the kit to inject methamphetamine into his girlfriend's anus prior to the date of the arrest.

Petitioner brings forward other arguments that do not meet the standard for actual innocence. For example, while the state forensics laboratory policies and practices regarding retention of undocumented controlled substances generally have been called into question by official reports of employees retaining and hiding from inspectors larger amounts of controlled substances than they were permitted to have on hand, which they allegedly used as display samples, Petitioner has not shown that these wrongs affected *his* particular case such that it renders him actually innocent.

Petitioner also requested DNA testing of the syringe in the bag. In light of his own testimony at trial that he handled the syringe when injecting his girlfriend with the

substance, Petitioner has not shown how DNA testing would have aided his case or would prove his innocence on the possession charge.

**8. Conclusion**

The Petition in this case was filed beyond the statute of limitations deadline. Petitioner has not presented adequate facts to show that the equitable tolling or actual innocence exceptions apply to excuse the late filing. The Court does not reach the procedural default arguments. Based on the foregoing, the Petition will be dismissed with prejudice.

## ORDER

**IT IS ORDERED:**

1. Respondent's Motion for Summary Dismissal (Dkt. 15) is GRANTED.

2. The Petition for Writ of Habeas Corpus (Dkt. 3) is DISMISSED with prejudice.

3. The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner files a timely notice of appeal, the Clerk of Court shall forward a copy of the notice of appeal, together with this Order, to the United States Court of Appeals for the Ninth Circuit. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED: February 4, 2016



_____

Honorable Candy W. Dale
United States Magistrate Judge